JUAN S. MARCHÁN, Plaintiff and Appellant, *v.* JOSÉ PEDRO
EGUEN OTAZABAL ET AL., Defendants and Appellees.

No. 5595. Argued December 16, 1931.—Decided January 13, 1933.

R. *Díaz Collazo* for appellant. *Largé & Acevedo* for appellees.

MR. JUSTICE ALDREY delivered the opinion of the Court.

Adolfo Graciano Eguen y Otazabal died on June 19, 1927,
in the town of Barceloneta, in this Island, and in March of
the following year Dr. Juan Marchán, a physician, brought
suit against his heirs to recover $22,000 for professional
services which he alleged to have rendered Eguen from 1917
until his death, and for other services rendered to several
persons during the said period of time, at the request of the
decedent.

Almost all of the medical services to which the complaint
refers are alleged to have been rendered more than three
years before the death of Eguen. The defendants set up the

three-year period of limitation as a defense, and on this ground the court rendered judgment for the plaintiff for the sum of $50 only, covering services rendered by the plaintiff to Eguen on the day of his death, without costs.

The first and fundamental error assigned on this appeal is that the appellant's action does not prescribe in three years, but in fifteen years after the medical services were rendered, since the code does not provide a special three-year period of prescription for the collection by physicians of fees for services rendered.

Our Civil Code is the same as that in force in Spain at the time of the change of sovereignty in this Island, save for very small changes, and contains a chapter dealing with the prescription of actions which is exactly the same as that of the Spanish code. In said chapter the term of prescription of real actions with respect to personal property is fixed at six years, and with respect to real property, at thirty years; the mortgage action at twenty years; personal actions having no special term, at fifteen; the term of actions to enforce the performance of certain obligations, such as payment of allowances for support, payment of rents whether derived from rural or town properties, and other payments which should be made yearly or in shorter instalments, is fixed at five years; and a term of one year is fixed for actions to recover or retain possession, for actions to enforce civil liability for grave insults or slander, and for obligations arising from fault or negligence. There exists also a three-year prescription, provided for in section 1868, which reads as follows:

"Actions for the fulfilment of the following obligations shall prescribe in three years:

"1. For the payment of judges, lawyers, registers, notaries public, experts, agents, and clerks for their charges and fees and the expenses and disbursements incurred by them in the discharge of their duties or offices in the matters to which the obligations refer.

"2. For payments to apothecaries for medicines which they have supplied; to professors and teachers for their salaries and stipends for the instruction they have given, or for the exercise of their profession, art, or trade.

"3. For the payment of mechanics, servants, and laborers the amounts due for their services, and for the supplies and disbursements they may have incurred with regard to the same.

"4. For the payment of board and lodging to innkeepers, and to traders for the value of goods sold to others who are not traders, or who, being such, are engaged in a different trade.

"The time for the prescription of actions referred to in the three preceding paragraphs shall be counted from the time the respective services have ceased to be rendered."

As may be seen, the first paragraph refers to judges, lawyers, registrars, notaries, experts, agents, and clerks; and the second paragraph to apothecaries and to professors and teachers.

The first meaning of the word "professor" (*profesor*), according to the Dictionary of the Spanish Academy, is a person who practices a science or an art. It is similarly defined in the *Diccionario Enciclopédico Hispano-Americano*, wherein are added the words of a writer reading as follows: " ... God taking her alive out of the arms of death, against the despair of Medicine and its most expert Professors. P. José Cascani." Escriche in his *Diccionario de Legislación y Jurisprudencia*, 1876 edition, volume 4, page 730, refers to physicians as professors of medicine. So, according to these definitions, the word "professors" used in the statute includes physicians. The Supreme Court of Spain so understood it when it used both words as synonymous in its judgment of April 19, 1882, 49 *Jurisprudencia Civil* 66, in stating that the three-year period of limitation is applicable to physicians for the recovery of fees for their services as such, using the word "physician" as the equivalent of "professor"; a construction which we must assume the Legislature took into consideration when enacting the Civil Code, and hence, in using the word "professors" in the statute, the legislator

must have meant it to include physicians, in accordance with the jurisprudence laid down in that case. The conclusion arrived at in that judgment seems to have been accepted as final, for no decision has been cited to us, nor have we found any on the point, subsequent to that judgment and to the Civil Code, which uses the word "professors." Moreover, a reading of the different terms of prescription in the chapter of the code which we have mentioned further convinces us of the justice of the decision cited, for, since the services of a lawyer are similar to those of a physician, although each in its respective sphere, we do not understand why actions by the former should prescribe three years after the services were rendered, and by the latter fifteen years thereafter. As stated in section 16 of the Civil Code, when the words of a law are dubious, their meaning should be sought by examining and comparing the obscure expressions with other related words and sentences in an orderly manner, in order to arrive at their true meaning; a rule which was also applied in the Spanish case cited, where it is said that it is a sound rule of construction to take into consideration not only the letter of the laws but also their object and scope, and that the fees of a physician are incurred and paid confidentially, and it is presumed that they are paid as soon as the services are rendered, since they constitute the means of livelihood of the professor, and after the lapse of a long time it is difficult or impossible to prove them, since their origin is preserved only in the memory of the interested parties, or in unilateral notes or entries lacking in form and authenticity. In conclusion, the period of prescription of the action for the recovery of the fees of a physician is fixed by subdivision 2 of section 1868 of the Civil Code, and the action therefore prescribes three years after the services are rendered, for which reason the lower court did not commit the error assigned.

Of the services which it is alleged were rendered personally to Eguen, there are only four items, marked with the numbers 9, 10, 11, and 12, which have not prescribed, the last

one of which covers professional services rendered by the plaintiff to Eguen on the day of the latter's death, which services were not denied by the defendants, and for which judgment has been entered against them. As to the items numbered 9, 10, and 11, the lower court, applying subdivision 5 of section 162 of the Law of Evidence, found that the services in question, consisting in treatment for impotence from December, 1925, to May, 1926, for an acute bronchial catarrh in February, 1926, and for an acute attack of colitis in June, 1926, were not proved.

The services rendered by appellant to persons other than Mr. Eguen during the years 1926 and 1927, marked with the numbers 14, 28, 30, and 50, likewise are not barred. With respect to these the court found for the defendants because it was not alleged or proved that Mr. Eguen agreed to pay for the said services, following our decision in the case of *Garcia* v. *Preston,* 17 P.R.R. 556. The errors assigned on this appeal and numbered 2, 3, 5, and 6, refer to the above matters.

With respect to the ninth item, which refers to services rendered to Eguen from December, 1925, to May, 1926, covering treatment for impotence, the plaintiff, an intimate friend of Eguen, at whose home he occasionally stayed, assisting him during one of such stays, testified that the impotence was caused by his specific gonorrheal inflammation, and also by his syphilis, for which reason he treated him for syphilis and prostatic gonorrhea; that the symptom considered by him in diagnosing syphilis was the existence of a chancre; that he did not test Eguen's blood for syphilis, and that the disease required him to visit the patient daily, and required the constant presence of the witness next to him, for it involved his moral as well as his organic condition. In opposition to this testimony there was presented a letter which Eguen wrote to Dr. Marchán on April 7, 1926, in which he said to him: "I have not seen you for some time. You do not come here as you used to formerly; it seems that you are forgetting."

José Torres Vargas, a farmer who lived in Eguen's house, and who ate at the same table with him, testified that Eguen attended to the crop of 1926, which began in January and ended in July, and that during this time he was not confined to his bed for any reason. Fernando Mariani, who was an employee at the office of Eguen and lived near his house, testified in terms similar to those of the former witness. Dr. Susoni, also an intimate friend of Eguen, and his doctor for a period of some twenty-four years, stated that he never charged for his services to Eguen as a physician, that Eguen was a relatively healthy man, that he never told him that he suffered from impotence; that he suffered from disorders purely of the digestive system; that once he complained of prostatic inflammation, of which he cured him; that a blood test is necessary in order to determine whether a person is syphilitic, and that when a chancre appears, its characteristics must be clinically determined always, since chancres may be specific, syphilitic, or simple. In 1922, Dr. Isaac González Martínez congratulated Eguen on the negative result of a test of his blood, and on May 5, 1926, Dr. Rafael del Valle Sárraga tested Eguen's blood for syphilis, and the result was plainly negative.

The tenth item refers to treatment for a bronchial catarrh in February, 1926, and the eleventh to treatment for an acute attack of colitis in June, 1926: both in the same period to which the ninth item above mentioned refers.

With respect to the bronchial catarrh, Dr. Marchán testified that Eguen had to stay in bed all of the month of February. The letter of Eguen, from which we have copied a paragraph above, and the testimony of Torres Vargas and Mariani bear relation to this item.

With respect to the colitis, or acute inflammation of the colon, in June, 1926, which is item No. 11, Dr. Marchán testified that it kept Eguen ill during the entire month of June; that it was more serious in him than in any other patient due to the fact that he was a chronic syphilitic, and also suf-

fered from intermittent chronic acute bronchitis. The tests of Eguen's blood with respect to syphilis, as well as the testimony of Torres Vargas and Mariani, also bear relation to this item.

In view of this evidence, and although Carmen Martínez, who was Eguen's housekeeper from 1919 to 1923, testified that Eguen continually fell ill, we can not say that the lower court erred in finding, in accordance with subdivision 5 of section 162 of the Law of Evidence, that the preponderance of the evidence was in favor of the defendants, and in holding, as a result, that the plaintiff did not prove the services to which the said three items referred.

Regarding such of the services which the plaintiff alleges having rendered to other persons at the request of Eguen as are not covered by the three-year term of prescription, the complaint alleged that they had been rendered at the request of Eguen, but it was neither alleged nor proved at the trial that Eguen had agreed to pay for them. The only thing proved is that Eguen sometimes accompanied Dr. Marchán in visiting some of the patients, who were employees of the firm Florida Agrícola Company, which Eguen managed.

In *Garcia* v. *Preston,* 17 P.R.R. 556, this Court held, as appears from the syllabus of the opinion, that in suits brought by a physician for the collection of fees for professional services rendered to a patient at the request of another who is not bound to supply him with medical attendance, in order that the complaint may state a cause of action it is necessary to set out facts tending to show that the person who called the physician agreed to pay his fees, and that in the absence of such an allegation the complaint is insufficient. It was also held that the relation of employer and employee existing between the patient and the person who called the physician is not in itself sufficient to make an employer liable who has called a physician to assist his sick employee, unless there is an offer on the part of the employer to remunerate such services.

We have said at the beginning that the complaint merely stated that those services were rendered at the request of Mr. Eguen, and the evidence has not supplied the omission of the allegation that he agreed to pay for the services rendered to those persons by Dr. Marchán. There is, therefore, no cause of action against the heirs of Eguen, according to the case cited, which is applicable to the instant case, for the fact that Eguen may sometimes have accompanied the physician in visiting some of those patients is not equivalent to an agreement to pay. This disposes of the fourth assignment of error. Moreover, those patients were not employed in the personal service of Eguen, but of the Florida Agrícola Company, an artificial person different from the person of Eguen.

Lastly, the witnesses José Torres Vargas and Mariani were believed by the lower court, and they testified, among other things, that they were present when, late in November, 1925, upon an occasion when Dr. Marchán requested and obtained from Eguen a loan of $3,000 secured by mortgage on a parcel belonging to his wife, Eguen asked Dr. Marchán how were they going to settle the amounts which he had previously loaned him, to which Dr. Marchán replied: ''Save me with the $3,000 now, and let my old debt to you go for whatever professional services I may have rendered you, as with this I consider myself paid and satisfied as to everything''; to which Eguen answered, smiling, that with him he was always the loser, but that he would accept his proposition to consider everything paid, and would lend him the $3,000 he was requesting. This loan was made by a public deed.

As a consequence of the conclusion we have reached, it is not necessary to consider the seventh and eighth assignments of error, to the effect that the lower court failed to consider expert testimony offered to determine the fair and true value of the professional services of the plaintiff appellant, and erred in not imposing costs on the defendants.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.